## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BEN RUDY CASTILLO,

       Plaintiff,

     vs.                                    Civ. No. 14-978 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

THIS MATTER is before the Court on Plaintiff Ben Rudy Castillo's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff disability insurance benefits. *Doc. 21*. Having reviewed the Motion and being otherwise fully advised, the Court finds that the Administrative Law Judge ("ALJ") erred by not addressing the conflict between her finding that Plaintiff is limited to simple work and the Vocational Expert's identification of jobs Plaintiff can perform that arguably require a higher level of reasoning.  The Court will, therefore, GRANT Plaintiff's Motion to Reverse and Remand as further discussed below.

### I.     BACKGROUND

Plaintiff Ben Rudy Castillo is a 42-year-old man with a history of back pain stemming, at least in part, from a 1991 motor vehicle accident. *Doc. 16*, Administrative Record ("AR") at 271, 344, 352. After his accident, Mr. Castillo recovered enough to work as a car painter for thirteen years. AR 224. In 2008, after being released from prison, Mr. Castillo filed an application for social security benefits alleging back pain, leg pain, and depression. AR 199, 246. On March 8, 2011, an ALJ denied Mr. Castillo's request for benefits. AR 9-16. Mr. Castillo appealed the

ALJ's decision to this Court and, on appeal, Magistrate Judge William P. Lynch remanded the case for further proceedings due to an inconsistency between the ALJ's recognition that Mr. Castillo was moderately limited in his ability to interact with supervisors and the ALJ's failure to consider this limitation in determining Mr. Castillo's capacity to work. *Castillo v. Astrue*, No. 12-cv-445 WPL, slip op. (D.N.M. October 30, 2012). On December 6, 2013, a second ALJ, Myriam C. Fernandez Rice, reevaluated Mr. Castillo's application for social security benefits in accordance with Judge Lynch's instructions. AR 380-392. ALJ Rice found that Mr. Castillo was not disabled within the meaning of the Social Security Act. *Id.*

ALJ Rice explained that Mr. Castillo suffered from three severe impairments – degenerative disc disease, depression, and high blood pressure – but that these impairments did not prevent Mr. Castillo from performing light work with restrictions. *Id.* ALJ Rice reasoned that Mr. Castillo "must be allowed to alternate between sitting and standing approximately every 20 minutes; never climb ladders, ropes, or scaffolds; occasionally climb ramps and/or stairs; occasionally balance, stop, crouch, kneel and crawl; should avoid concentrated exposure to extreme cold or heat, wetness or humidity, and excessive vibration; can understand, remember and execute simple instructions and tasks in a work environment that is primarily object focused; and can maintain concentration, pace, and persistence for two hours at a time, before and after regularly scheduled breaks in the morning, lunch, and the afternoon." AR 384-85. In reliance on the testimony of a Vocational Expert ("VE"), ALJ Rice concluded that Mr. Castillo could, with the above restrictions, perform a variety of jobs that exist in the national economy. AR 391. Mr. Castillo now again appeals to this Court. *Doc. 1.*

Mr. Castillo's pre-March 2011 medical history is well documented in Judge Lynch's Memorandum Opinion and Order, and need not be repeated in detail here. *Castillo*, No. 12-cv-

445 WPL, slip op. at 3-7 (D.N.M. October 30, 2012). Since March 2011, when the first ALJ determined that Mr. Castillo did not qualify for benefits, Mr. Castillo has returned to his primary care physician, Dr. Maxsimo Torres, twice: once in March 2011 and once in April 2011. The purpose of both these visits was to monitor Mr. Castillo's hypertension. AR 536, 548. Additionally, Dr. Torres prescribed Baclofen, Ibuprofen, and Gabapentin for "intervertebral disc degeneration" and counseled Mr. Castillo on managing low back pain and lifting safety; thus, it appears that Mr. Castillo also complained to Dr. Torres about back pain. AR 538, 550. Around this same time, on April 7, 2011, Mr. Castillo went to the hospital complaining of unexplained abdominal pain. AR 539-547. He was released with instructions to drink clear fluids, take pain medication, and follow-up with Dr. Torres as soon as possible.  AR 456. There are no other medical records in the administrative record from March 2011 to the present date.

## II.     APPLICABLE LAW

### A.  Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B.  Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent

4

conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III.   ANALYSIS

In his opening brief, Mr. Castillo identifies three alleged errors for review: (1) the RFC is not supported by substantial evidence because the ALJ gave little or limited weight to all of the medical evidence in the record, (2) the ALJ failed to provide a narrative discussion of how the evidence supports her RFC,[1] and (3) the ALJ erred at step five by relying on the VE's testimony that an individual, such as Mr. Castillo, who was limited to understanding and following simple instructions, could work as a mail clerk and storage-facility renter clerk. *Doc. 21* at 8-12. The Court will address each of these contentions below.

### A.  The ALJ's Alleged Rejection of the Medical Evidence

Plaintiff's first claim of error is that the ALJ discounted all the medical opinions and, therefore, no substantial evidence exists to support her RFC. *Doc. 21* at 8-9.  Plaintiff is correct

---

[1] Mr. Castillo groups the first two errors under one heading: "The ALJ erred in evaluating the medical opinions." *Doc. 21* at 8-9.

that the ALJ gave little or limited weight to the opinions of a number of doctors in this case.
This does not mean, however, that, in reaching a middle ground, she rejected all of the medical
evidence and based her opinion on only her lay opinion.  To the contrary, the ALJ considered the
medical opinions offered in combination with Plaintiff's own testimony and evidence of
Plaintiff's work history since his back injury.  Even with the reduced weight the ALJ gave to
some of the medical opinions, substantial evidence exists to support her ultimate conclusion.

Between 2008 and March 8, 2011, Mr. Castillo sought treatment from three doctors, (1)
Soofia Khan, a doctor Mr. Castillo saw in 2008 as part of a rehabilitation program; (2) Lhudi
Jimenez, a physical therapist Mr. Castillo saw in 2008; and (3) Maxsimo Torres, a primary care
physician Mr. Castillo began seeing in 2011. AR 276, 288, 352. In 2008, Mr. Castillo also
underwent two consultative examinations as part of the process of applying for social security
benefits. He saw Harry Burger, D.O. for a physical examination and Richard Fink, Ph.D. for a
psychological examination. AR 311-314, 316-318. Dr. Burger was of the opinion that Mr.
Castillo could "function for gainful employment." AR 314. Similarly, Dr. Fink concluded that,
while Mr. Castillo might not interact well with the public or co-workers, he retained normal
ability to understand and remember detailed and complex instructions. AR 318. In 2011, Mr.
Castillo's attorney arranged for Mr. Castillo to have an additional physical examination with
John R. Vigil, M.D. and an additional physiological examination with Steven K. Baum, Ph.D.
AR 355-364. Dr. Baum found that Mr. Castillo was mildly limited in his ability to understand
and remember instructions and his ability to interact with others. AR 357-358. Dr. Vigil
concluded that Mr. Castillo was medically disabled due to back and leg pain. AR 363.

In the section of the ALJ's opinion explaining the RFC, ALJ Rice rejects the opinion of
Dr. Vigil, but explains that she is giving weight, albeit limited, to the opinions of Drs. Burger,

Fink, and Baum.[2] AR 385-390. Additionally, in determining that Mr. Castillo is physically capable of performing light work, the ALJ relied heavily on evidence from Mr. Castillo's treating physicians (Dr. Khan, PT Jimenez, and Dr. Torres) as well as a radiology report. *Id.* ALJ Rice specifically notes that PT Jimenez treated Mr. Castillo primarily for a mild list in his gait and very occasional back pain and did not give any indication that Mr. Castillo was "experiencing significant back or leg pain or was unable to ambulate effectively." AR 386. Similarly, ALJ Rice reviewed Dr. Torres's treatment records, which noted that Mr. Castillo was complaining of back pain and confirmed that Mr. Castillo had minimal thoracic scoliosis and a mild anterior wedge compression fracture. AR 387. However, as the ALJ stated, these records also revealed that Mr. Castillo had not filled his prescription for medication for back pain, that Mr. Castillo had normal balance, gait, and stance, and that the radiology report showed no acute back abnormalities. *Id.* The ALJ cited this evidence, as well as Mr. Castillo's admission that he was currently working half time, to support the physical portion of her RFC. AR 385-389.

Insofar as Mr. Castillo's complaint that the ALJ's alleged rejection of all the medical evidence indicates that Mr. Castillo thinks the evidence the ALJ did credit cannot support the physical portion of the RFC, the Court finds that this argument has been waived. Mr. Castillo has not pointed to any inconsistencies between the records of his treating physicians and the RFC. Nor has he otherwise developed the argument that the records of these treating physicians and his own testimony are insufficient evidence to support the RFC. It is well-settled that the Court will not manufacture a litigant's arguments for them and issues adverted to in a perfunctory

---

[2] In his reply, Mr. Castillo insinuates that the ALJ may have rejected the opinions of Drs. Vigil, Burger, Fink, and Baum without sufficient justification. *Doc. 25* at 2 ("[T]he ALJ failed to provide the adequate explanation for the portions of the medical opinions she chose to reject . . ."). The Court will not consider this argument because it was not set forth in the opening brief. *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1175 (10th Cir. 2000) (issues raised for the first time in a reply brief are deemed waived). Moreover, the Court notes that in Mr. Castillo's first appeal, Judge Lynch rejected his argument that the ALJ had erred in giving little weight to the opinions of Drs. Baum and Vigil. *Castillo*, No. 12-cv-445 WPL, slip op. at 9-12 (D.N.M. October 30, 2012).

manner, unaccompanied by some effort at developed argumentation, are deemed waived. *Mays v. Colvin*, 739 F.3d 569, 575-576 (10th Cir. 2014).

As for the ALJ's conclusions regarding Mr. Castillo's alleged mental limitations, the ALJ reached her RFC decision by considering the opinions of Drs. Fink and Baum in connection with the testimony of Mr. Castillo. In particular, the ALJ tempered the findings of Drs. Fink and Baum based on Mr. Castillo's undisputed failure to ever seek treatment for depression and Mr. Castillo's own testimony that he "does not have problems interacting with relatives, his girlfriend, their girlfriend's father (his boss), coworkers, the public, and his 4 or 5 friends that he sees weekly." AR 388, 390. Mr. Castillo has not identified any errors in the ALJ's analysis. Nor will the Court manufacture such arguments on Mr. Castillo's behalf  based on his barebones assertion that the ALJ gave little or limited weight to all of the medical evidence thereby leaving no evidence to support the RFC as a whole. Mr. Castillo never specifies how this objection applies to the mental health evidence. It is clear, however, that the ALJ did not, as Mr. Castillo contends, reject all of the medical evidence in the record, adopting an RFC based only on her lay opinion. The Court, therefore, rejects Mr. Castillo's first argument.

**B.  The Narrative Discussion Requirement**

Like his first claim of error, Plaintiff's second argument – that the ALJ failed to include an adequate narrative discussion of the evidence – is so general it is difficult to evaluate without independently scrutinizing the record and formulating arguments on Plaintiff's behalf. When an ALJ determines a claimant's RFC, "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 SSR LEXIS 5, at * 19, 1996 WL 374184 (July 2, 1996). Without pointing to any specifics, Plaintiff asserts that the ALJ did not abide by this rule because

she failed "to follow the narrative discussion requirements" and "failed to provide a link between her findings and the evidence." *Doc. 21* at 9; *Doc. 25* at 2. However, as Plaintiff admits, the ALJ discussed all of the medical evidence in the record in the narrative portion of her RFC discussion. The ALJ also provided a detailed summary of Mr. Castillo's testimony, which bears a clear relation to the RFC. For example, Mr. Castillo testified that he has been working four hours a day, five days a week doing auto body work. He explained that this work required him to get underneath cars and hunch over. He also testified that he can walk about a block before resting and can stand for 15 to 20 minutes at a time. AR 385-86. In the RFC, the ALJ found that Mr. Castillo could perform light work, but must be permitted to alternate between sitting and standing every 20 minutes and could only occasionally balances, stoop, crouch, kneel and crawl. AR 384-85. The ALJ also included hazard limitations, which she explained would accommodate any dizziness Mr. Castillo might experience due to his hypertension. AR 388. While the Court rejected Mr. Castillo's claims that his back and leg pain prevented him from working full time, the ALJ explained this decision by pointing to Mr. Castillo's failure to take medication for back pain and the lack of evidence of a significant back condition. These are just examples of the ALJ's narrative discussion.   Plaintiff has not specifically identified anything missing from the narrative and the Court will not forage through the record in search of something the ALJ should have, but did not discuss.  Nor will the Court recite the entire record to identify all the evidence the ALJ discussed which supports each of her findings. The ALJ conducted a thorough review of the medical record and explained why she was accepting certain parts of this evidence and not others.

### C.  Reliance on the Vocational Expert

At step five of her analysis, ALJ Rice relied on the testimony of a Vocational Expert ("VE") regarding what sort of work an individual with Mr. Castillo's RFC would be able to perform. Specifically, ALJ Rice adopted the VE's finding that an individual, such as Mr. Castillo, who was limited to following and completing simple instructions or tasks could work as a mailroom clerk/sorter or as a storage facility rental clerk. AR 391. Mr. Castillo argues that ALJ Rice erred by adopting this testimony without reconciling the apparent inconsistency between Mr. Castillo's mental limitations (in the RFC, ALJ Rice found that Mr. Castillo should be limited to simple tasks that are object-focused) and the reasoning level required to work as a mailroom clerk or storage facility rental clerk.

Mr. Castillo emphasizes that the Department of Labor's Dictionary of Occupational Titles ("DOT") classifies both of these jobs as requiring a General Educational Development ("GED") Reasoning Level of 3, which is defined as the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (quoting DOT, Vol. II at 1011). In Mr. Castillo's opinion, this definition is inconsistent with a limitation to simple work and ALJ Rice should have rejected the VE testimony on these grounds. *See* SSR 00-4p, 2000 SSR LEXIS 8, *4-5, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

In a 2005 decision, the Tenth Circuit addressed this exact issue. *Hackett*, 395 F.3d 1168. In *Hackett*, the Tenth Circuit agreed with the claimant that there is an apparent conflict between Level-3 Reasoning and simple work restrictions. It held that an ALJ may not conclude that a claimant who is restricted to simple work can perform a Level-3 job without addressing this conflict. Given the parties' disagreement about how to read *Hackett*, it is worth quoting its holding at length:

> Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs requiring a reasoning level of three. The ALJ's findings with regard to Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with the demands of level-three reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher). We note that level-two reasoning requires the worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC. We therefore must reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE.

*Id.* at 1176. *Hackett* supports Mr. Castillo's position that the ALJ erred in evaluating his disability claim.

Here, like in *Hackett*, ALJ Rice simply adopted the VE testimony regarding Mr. Castillo's alleged ability to work as a mailroom clerk and storage facility rental clerk without discussing the apparent conflict between the GED Reasoning Level associated with these jobs and Mr. Castillo's mental limitations. This was a clear error. Under *Hackett,* ALJ Rice was required to evaluate the apparent conflict and, based on her assessment of this conflict, either (1) explain why it was reasonable to conclude that Mr. Castillo would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job-requirements and

his abilities **or** (2) reject the VE testimony due to the conflict. *See Brown-Mueller v. Colvin*, No. 13-cv-00537, 2015 U.S. Dist. LEXIS 38418, at *8-9 (D. Colo. Mar. 25, 2015) ("Under Tenth Circuit precedent, this inconsistency requires remand so that the ALJ can address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."); *Cordova v. Astrue*, No. 10-cv-01294, 2011 U.S. Dist. LEXIS 82828, at *9 (D. Colo. 2011) ("[I]t was the ALJ's duty to 'investigate and elicit a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.'").

Defendant has asked the Court to excuse the ALJ's failure to conduct the above analysis because, she argues, no conflict exists between light work restrictions and GED Level-3 Reasoning classifications. In support of this position, Defendant provides a detailed analysis of the DOT job classifications measures and their particular purposes.  In so doing, Defendant makes a number of valid points apparently not considered in *Hackett.* Ultimately, however, these points amount to an argument that *Hackett* was wrongly decided and do nothing to address whether *Hackett* is controlling.

Faced with the difficulty of what *Hackett* does hold, Defendant focuses on what *Hackett* does not hold.  Specifically, Defendant points out that *Hackett* does not hold "there is a per se conflict between GED Reasoning Level 3 and a restriction to simple work." *Doc. 24* at 17.  Thus, *Hackett* does not foreclose the possibility that some claimants who are restricted to simple work may be able to perform some jobs that require a GED Reasoning Level of 3. The Tenth Circuit did, however, hold that when a claimant is limited to simple tasks, the ALJ must address a claimant's ability to perform Level-3 work in a factually specific manner.  *Hackett,* 395 F.3d at

1176. ("We therefore must reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE.").  Thus, even if the Court were to accept Defendant's argument that an ALJ may disregard the GED Reasoning Level in deciding whether an educated individual like Mr. Castillo has the ability to work in a given occupation, the Court would still have to remand to allow the ALJ to engage in the analysis of whether doing so in this case is appropriate.[3]

Defendant's argument that *Hackett* need not be followed also fails.  Defendant asserts that "this Court must apply the Commissioner's reasonable interpretation even in the face of otherwise binding precedent." *Doc. 24* at 18.  And, she continues, "the Commissioner's regulations presume that SVP [specific vocational preparation] is the most probative factor when assessing the mental demands of a job." *Id*.  Had the ALJ's analysis been similar to that in Defendant's Response, it might be necessary for the Court to rule on this issue.  But the ALJ engaged in no analysis of Plaintiff's SVP and made no attempt to explain why Plaintiff, who she found must be limited to simple tasks, could engage in occupations that require a GED Reasoning Level of 3.  Rather than engaging in any analysis about what an SVP level means and how it should be applied to the facts of this case, the ALJ merely noted what SVP level the VE

---

[3] The Court acknowledges that *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) lends some encouragement to Defendant's position that the DOT's Reasoning Development Level, which "describes the general educational background that makes an individual suitable for the job" should not be used to determine whether an individual has the "specific mental or skill requirements of a particular job." *Id*. at 764. However, *Anderson* is an unpublished decision that does not affect this Court's responsibility to follow *Hackett*, a published and binding Tenth Circuit decision. *See Haynes v. Williams*, 88 F.3d 898, 900 (10th Cir. 1996) ("A published decision of one panel of [the Tenth Circuit] constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *see also United States v. Rodriguez-Aguirre*, 414 F.3d 1177, 1185 n. 10 (10th Cir. 2005) ("When faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom."). Furthermore, the Tenth Circuit never discusses *Hackett* in *Anderson*, and so *Anderson* has limited value in considering the meaning of *Hackett*. Finally, and most importantly, *Anderson* ultimately assumed a conflict between the VE's testimony and the DOT, but found that the ALJ's failure to resolve the conflict to be harmless given that the VE also described jobs that exist in significant numbers at the lower Reasoning Development Level.  *Anderson* at 764.  The same circumstances are not apparent in the present case.

testified Defendant has.  AR 391.  Thus, even if the Court were to accept Defendant's argument that Plaintiff's SVP level could trump his GED Reasoning level and the Tenth Circuit's decision in *Hackett*, the Court still would be required to remand the case so that the ALJ could analyze how Plaintiff's SVP level applies to his situation and the occupations the VE testified he could perform.

Further, Defendant cites *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) a case involving *Chevron* deference. The Supreme Court has defined *Chevron* deference as a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency . . . (rather than the courts)." *Id.* Defendant has not cited to any authority that this principle, which involves the resolution of statutory gaps, requires courts to provide deference to an ALJ's evaluation of a claimant's ability to perform certain work. In the absence of any such authority, the Court will treat *Hackett* as binding authority in this case.

In *Hackett*, the Tenth Circuit held that  a facially apparent conflict exists between jobs requiring a GED reasoning level of 3 and claimants who are restricted to simple work. This apparent conflict cannot be ignored.  Because the ALJ failed to address this facially apparent conflict, the Court must "reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple . . . tasks and the level-three reasoning required by the jobs identified as appropriate for [him] by the VE." *See Hackett,* 395 F.3d at 1176.

IT IS THEREFORE ORDERED that Claimant Ben Rudy Castillo's Motion to Reverse and Remand (*doc. 21*) is granted. The Social Security Commissioner's denial of Mr. Castillo's

claim for disability benefits is reversed and the case is remanded for further proceedings that are consistent with this opinion.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE